ANTONIO ROMERO CABRERA, Appellant, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, Respondent; JUAN MÁRQUEZ RIVERA, Claimant.

No. 200. Argued June 17, 1940.—Decided July 19, 1940.

*Miguel A. Muñoz* for appellant. *M. León Parra* for the respondent commission.

Mr. Chief Justice Del Toro delivered the opinion of the court.

This is a proceeding for review taken by an employer against a decision of the Industrial Commission, holding that said employer must pay to a certain workman the amount of an award granted to the latter.

The appellant urges that the commission erred in holding that the workman was covered by the statute, in deciding that the appellant was the employer of the workman and bound to insure the latter, and in declaring that the appellant was responsible for the damages suffered by the workman in consequence of the accident.

From the original record sent up by the commission it appears that on February 2, 1939, the workman Juan Márquez Rivera presented to it his petition, setting forth that on June 5, 1938, he had sustained a fracture of his right leg while working for the employer Antonio Romero—appellant herein—as a laborer in the truck belonging to said employer.

The commission requested a report from the Manager of the State Insurance Fund as to the status of the employer, and the manager answered that said employer, during the year 1937–38 when the accident occurred, was insured for the transportation of passengers by motor bus, Code Nos. 7382 and 8385, but not for truck risks, Code No. 7219. He also reported that he had fixed the sum of $800 as security for any compensation that might be awarded.

Upon the employer being summoned, he appeared before the commission and alleged that the case did not fall within its jurisdiction, as the injury was not a compensable one. The proper investigation was then commenced, and in referring to the result of the same, the commission, after summarizing and analyzing the proceedings had and the evidence introduced by both parties, stated as follows:

"From the evidence it appears that Juan Márquez Rivera, for about three years, had been working as a loader (*peón de carga*) in a truck owned by Antonio Romero Cabrera. Faustino Soto, whom

Mr. Romero Cabrera had authorized to employ helpers on the truck, as a witness for the employer stated that on the day of the accident he and Márquez (Rec., p. 40) were going to look for a helper, and that he needed Márquez, adding—in answer to questions asked by the workman—that on the day of the accident he put gasoline in the truck and Juan Márquez Rivera put water in it. He also admitted that on the same day, after the accident affecting Juan Márquez Rivera had occurred, he asked Nicolás Rosario to substitute the former in the trip which they were going to make to La Sierra. At no time did the employer introduce any evidence to contradict the statements of his own witness, in virtue of all which we think that on that day of the accident Juan Márquez Rivera was working.

"At the moment when Juan Márquez Rivera received first medical aid, he smelled somewhat of alcohol (see testimony of Jesús Colón, p. R.P.H. 4/20/39) and Dr. Hilario Caso characterized the condition of the patient as one of intoxication. The alleged intoxication of Juan Márquez Rivera, however, does not seem to have incapacitated him from doing his work, for if we remember the testimony of Faustino Soto, Juan Márquez Rivera was the one who put water in the truck before the accident occurred, and the whole evidence tends to show that at the moment of the accident Juan Márquez Rivera was occupying the place which he customarily occupied in the truck while working... The employer in this case failed to produce the necessary evidence to convince us that the intoxicated condition of Juan Márquez Rivera was the cause of the accident, and after a careful study of all the evidence introduced, we consider that, even though Juan Márquez Rivera should have drunk some liquor, this does not show or prove, that such fact was the cause of the accident.

"\* \* \* , \* \* \* \* \*

"Counsel for the employer in his brief maintains that Faustino Soto operated his transportation business without the supervision, intervention, or direction of Antonio Romero Cabrera, owner of the truck. The employer in his brief says that what happened was that, as regards the expenses of the business, the same were paid from the proceeds thereof, including oil, gasoline, wages of laborers, and then Faustino Soto collected 15 per cent of whatever he made on the freight carried.

"This shows in our judgment that Faustino Soto was not an independent employer. There is no doubt that Faustino Soto enjoyed better terms of employment than those available to other persons who worked in the truck of Antonio Romero Cabrera, but he too was a workman employed by Antonio Romero Cabrera.

"\* \* \* \* \* \* \* \*

"For the reasons stated the Industrial Commission holds that Juan Márquez Rivera was a workman employed by Antonio Romero Cabrera at the time he suffered the accident;

"That the employer Antonio Romero Cabrera was bound to insure the workmen who worked in the truck belonging to him in the same manner that he has insured those employed in his motorbuses;

"That the workman Juan Márquez Rivera suffered an accident which arose from an act or function inherent in his employment and in the course and as a consequence thereof, for which reason the injury is compensable, in accordance with Act No. 45 of April 18, 1935, and the employer Antonio Romero Cabrera is responsible for said accident.

"That the workman, by reason of his permanent partial disability consisting in the loss of 66⅔ per cent of his right leg at the upper third thereof, is entitled to the compensation provided by law in addition to his weekly allowances computed during the period that he was under medical treatment or disabled for work, the sum of $174.50, which the employer supplied to the workman while the latter was under medical treatment, to be deducted from the compensation corresponding to the workman; and that in addition to the compensation for the workman, the employer shall pay the expenses incurred by the Industrial Commission in this case.

"It is ordered that the Manager of the State Insurance Fund determine the proper compensation and the expenses in this case and that he certify his decision to the Treasurer of Puerto Rico, in order that the latter may collect from the employer said compensation and expenses in accordance with the provisions of section 15 of Act No. 45 of April 18, 1935.''

The indemnity to be paid was liquidated as follows:

| | |
|---|---:|
| "Wages lost to the workman | $32.00 |
| "Compensation for disability | 450.00 |
| "Total compensation for the workman | 482.00 |
| "Advances by the employer to the workman | 174.00 |
| "Balance for the workman | 307.50 |
| "Hearing before Industrial Commission | 78.50 |
| "Traveling expenses Industrial Commission | 10.70 |
| "Attachment | 1.00 |
| "Administrative expenses | 1.50 |
| "Administrative expenses Industrial Commission | 5.00 |
| Total | $404.20'' |

 Let us see whether or not the accident is covered by the statute.

Section 4 of the applicable law—Act No. 45 of 1935, Session Laws, pp. 250, 272—provides that accidents occurring "when the workman or employee is intoxicated, provided such intoxication is the cause of the accident" are not compensable labor accidents. As a matter of fact we know that the commission concluded that, although there were signs of intoxication on the part of the workman, such signs failed to show that he was so intoxicated that it incapacitated him from doing his work, he having, on the contrary, performed acts which indicated that he was not so incapacitated, and it has not been shown to us that the commission erred in making such finding.

 Is this the case of a workman employed by an independent contractor?

In maintaining the affirmative the appellant says that an examination of the record will show that Soto conducted his transportation business with full independence and without appellant's intervention, as he contracted directly with whom he chose for the carriage of freight to any part of the Island, fixing the charges and collecting the same, and it was he who engaged the helpers that might be needed. Appellant cites numerous decisions, and lays emphasis on the cases of *Fidelity & C. Co.* v. *Industrial Acc. Com.*, 191 Cal. 404, and *Luckie* v. *Diamond Coal Co.*, 183 P. 178, 183, and on the note appearing on pages 1312 to 1319, vol. 43 A.L.R.

In the first of the cases cited by the appellant, namely, *Fidelity & C. Co.* v. *Industrial Acc. Com.*, 191 Cal. 404, it was held that—

"Where a party carrying on the business of transporting freight by automobiles between certain points entered into a contract with another, engaging his exclusive services for a specified period to carry freight, the latter to furnish his own truck and trailer, keep them in repair, pay all operating expenses, including the driving, and to make one trip each twenty-four hours unless detained by

break-downs, compensation to be not less than a certain amount per hundred pounds of freight carried, with a minimum monthly amount, the first party (the owner of the business) to provide the loads of freight to be shipped, furnish warehouses and assume all responsibility of the billing and collecting of charges, for which he was to be paid by the truck owner a certain per cent of his gross receipts, the first party to assume and perform all services in connection with the loading, unloading, distributing, and assembling of the loads, for which he was to have the use of the truck, and was to be paid a monthly amount therefor by the truck owner, the contract being transferable to a third party, subject to approval by the first party, as the truck owner by his contract was under the control of the first party as to the result of his work only, and not as to the means by which such result was to be accomplished, he was an independent contractor.''

In the course of the opinion it was said:

''In determining in any given case whether a person was an employee or an independent contractor there are usually present various circumstances which are persuasive to one conclusion, and other circumstances persuasive to the opposite conclusion. But an analysis of the cases makes it plain that the determinative factor is usually found in the solution of the question: Who has the power of control, not as to the result of the work only, but as to the means and method by which such result is accomplished?...

'' 'He is deemed to be the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents, not merely in the ultimate results of the work, but in all the details. The legal test for the determination of the question is stated by Thompson as follows: ''An independent contractor, within the meaning of this rule, is one who renders service in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished.'' (1 Thompson on Negligence, secs. 621, 622.)' ''

The case was decided by a majority vote, three out of the seven judges of the court dissenting.

In the second case, that is, *Luckie* v. *Diamond Coal Co.*, 183 P. 178, also from California, decided, not by the Supreme Court, but by the District Court of Appeal, Second District, Division 2, it was held that—

"A conditional vendee and lessee of a motortruck, who is under a contract of employment to haul coal for a lessor, who has no right to control and direct the manner in which the hauling should be done, is an independent contractor, for the negligence of whose servants the lessor is not liable.

"The doctrine of *respondeat superior* applies only where the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged with the result of the wrong, at the time and in respect to the very transaction out of which the injury arises."

Lastly, in the cited note published in 43 A.L.R. 1312–1319 there are set forth the following principles, taken from pertinent citations, thus:

"Among all the circumstances bearing upon the determination of the question whether a truckman is an independent contractor or an employee, the right of the employer to control the truckman is the most decisive...."

"Where the employer assumes control over the manner and means of doing the work rather than over the result, the truckman is an employee rather than an independent contractor...."

"Where the right to control the means and methods of doing the work is vested in the truckman, who is responsible to his employer only for the ultimate result, the truckman is an independent contractor rather than an employee...."

"In many of the cases the right of either of the parties to terminate the relationship at will, without incurring liability to the other, which includes the right of the employer to discharge the truckman at any time, is regarded as the principal factor in determining the main test, namely, that the employer has a right to control the truckman, and that consequently the latter is an employee rather than an independent contractor...."

"The fact that the contract calls for the performance of a specific piece of work, as distinguished from work in general, is a circumstance indicating that the employment is independent...."

"Where, under the contract of employment, the truckman is not obligated personally to perform the work, but may employ substitutes to that end, the employment is generally an independent one...."

"The mere furnishing and maintaining of a truck by the truckman, does not affect his status as an employee, though the opposite

conclusion·might be reached in the case of one engaged in the trucking business, who furnished and maintained a number of trucks...."

"The fact that the truckman in question was a servant of the employer prior to undertaking his duties as truckman is a circumstance indicative of a continuation of the relationship of employer and employee...."

"The fact that the truckman performs services for others may be a circumstance indicating independence of employment, but it is by no means conclusive...."

As may be seen, the question involved has been presented many times to the courts, and when it is on the border line its determination is not an easy one. After an examination of the case at bar in the light of the decisions cited, it must be acknowledged that the conclusion that Soto Nieves was an independent contractor is not entirely groundless.

However, the conclusion reached by the commission is not groundless either. Faustino Soto Nieves testified in part as follows:

"Well, I have been with Mr. Romero for four years, and he gives me his truck and I work on a percentage basis; I solicit the freight and after I collect the charges I liquidate the gasoline, the oil, and the wages of laborers and then keep my percentage and deliver the balance to Mr. Romero." (Rec., p. 33.) In explaining the manner in which he disposes of the money he says: "Mr. Romero has an employee in his office and I go to his office to have him make the distribution: the gasoline is paid, the money for the laborers is paid, I collect my percentage, and the balance is delivered to Mr. Romero in his office, I collect 15 per cent." (Rec., p. 35); that the laborers are paid at the rate of 50 cents per trip; that he pays the laborers but he goes to Mr. Romero's employee in order that the latter may make the liquidation (Rec., p. 43); that he lives somewhere on the highway leading from Bayamón to Comerío and keeps the truck there, under his control; that he works with the truck as he pleases. (Rec., p. 36.)

Márquez, the injured workman, testified thus:

"Q. Do you know whether it is Faustino who engages the laborers?—A. No, sir, he is not the one who engages them.—

Q. Did Romero engage the other laborer? Did you state that it was Romero, not Faustino, who engaged you?—A. Yes, sir, Don Antonio Romero called me to work in that truck."

The evidence does not supply with clearness or in detail all the elements which the courts must take into consideration in deciding the question either way. In these circumstances, and as the burden is on the party who has the affirmative— and the employer is the party who asserts that an independent contractor is involved in this case—we think that the reversal sought must be denied.

Instead of involving an independent contractor, the present case seems to be rather that of a joint business to which Romero contributes the truck and Soto the work, Romero being the one who has final control of the same although Soto has other powers necessary for the successful operation of the enterprise. In this case there is no doubt that Romero is the employer who should have taken care to insure his workmen and who in any event is responsible for the accident.

The petition for review must be denied.

Mr. Justice De Jesús took no part in the decision of this case.